[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a medical malpractice action in which a motion to strike has been filed. The plaintiffs are Santina Vecchio and Anthony J. Vecchio, III, both individually and as administrators of the estate of their deceased son, Anthony J. Vecchio, W. The defendants are the Rye Brook Obstetrics-Gynecology, P.C., and Elizabeth Jane Legatt, M.D., who is described in the complaint as an "agent, servant or employee" of the corporate defendant.
The second revised complaint of October 16, 2001 contains three CT Page 7939 counts. In the first count, the plaintiffs allege that Mrs. Vecchio, a high risk patient, was under the care of the defendants in connection with the expected birth of her child on or about July 22, 2000; that the defendants were professionally negligent in ignoring information from Mrs. Vecchio on June 10, 2000 that she no longer could feel her unborn baby moving, but rather sent her home from the hospital, and that the next day, June 11, 2000, she delivered a stillborn child. In the second count of the complaint, the plaintiffs allege that Mrs. Vecchio sustained pain, suffering and emotional distress as a result of the negligence of the defendants. In the third count, Mr. Vecchio claims that he suffered "bystander" emotional distress as a result of "contemporaneously witnessing the medical condition of the Plaintiff Santina Vecchio and the delivery of his deceased son."
The defendants have filed a motion (#112) to strike counts one and three of the complaint. The defendants claim that there can be no recovery for wrongful death unless the child was born alive. As to count three of the complaint, the defendants contend that there is no basis for bystander emotional recovery in the context of medical malpractice. The defendants also move to strike the entire case against the corporate defendant, Rye Brook Obstetrics-Gynecology, P.C., on the ground that the complaint does not specify any negligence committed by that defendant.
"Whenever any party wishes to contest . . . the legal sufficiency of the allegations of any complaint . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 10-39; see also Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998). "The proper method to challenge the legal sufficiency of a complaint is to make a motion to strike prior to trial." Gulack v. Gulack, 30 Conn. App. 305, 309, 620 A.2d 181
(1993). "The role of the trial court [in ruling on a motion to strike is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the plaintiffs have stated a legally sufficient cause of action." Napoletano v. Cigna Healthcare of Connecticut, Inc.,238 Conn. 216, 232-33, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103,117 S.Ct. 1106, 137 L.Ed.2d 308 (1997).
The defendants argue that the plaintiffs failed to allege that the fetus was viable at the time of its delivery and therefore the plaintiffs failed to allege a cognizable cause of action. Two Superior Court cases have recognized a right to recovery for a viable unborn child referring to Hatala v. Markiewicz, 26 Conn. Sup. 358, 362, 224 A.2d 406 (1966) andGorke v. LeClerc, 23 Conn. Sup. 256, 262, 181 A.2d 448 (1962). "Courts [across the country] have reached conflicting results in deciding whether a wrongful death action is maintainable for the death of an unborn child. Many cases have held that where an unborn child was viable (that CT Page 7940 is capable of independent existence apart from its mother) at the time of sustaining injuries resulting in prenatal death, a wrongful death action for the unborn child's death is maintainable, but other cases have held, to the contrary, that even if an unborn child was viable, a wrongful death action is not maintainable." Annot., 84 A.L.R.3d 411, 415 (1978).
The allegations in the present case make it readily apparent that the unborn child most likely reached viability because he was alive almost eight months after conception. The two Connecticut cases previously cited have considered whether the administrator for the estate of an unborn child who had reached viability may state a cause of action for wrongful death. See Hatala v. Markiewicz, supra, 26 Conn. Sup. 362 and Gorke v.LeClerc, supra, 23 Conn. Sup. 262. Both cases hold that the administrator may state a legally sufficient wrongful death claim in case of a viable fetus. This court agrees with the well-reasoned analysis in those opinions. Therefore, the defendants' motion to strike count one is denied as the viability of the child in this case is evident from the number of months that elapsed after his conception.
Count three alleges bystander emotional recovery on the part of the father, the plaintiff, Anthony J. Vecchio, who witnessed the stillborn delivery of his son. The defendants bring the motion to strike on the ground that no cause of action exists for a bystander emotional distress claim in the medical malpractice context. "There is a split of authority in the superior court concerning whether an individual may state a legally sufficient cause of action for bystander emotional distress in the medical malpractice context. The majority of cases do not allow such actions." Klinkowitz v. Greenwich Hospital Assoc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 170276 (October 29, 1999, D'Andrea, J.).
In Maloney v. Conroy, 208 Conn. 392, 545 A.2d 1059 (1988), the Supreme Court held "that a bystander to medical malpractice may not recover for emotional distress . . ." In Maloney v. Conroy, the plaintiff sought damages for negligent infliction of emotional distress she suffered as a result of the defendant's medical malpractice in the treatment of her deceased mother. The court stated that: "[t]o allow recovery by one, like the plaintiff, who has been more or less constantly `at the bedside' of the malpractice victim during the period of treatment is likely to cause hospitals and other medical treatment facilities to curtail substantially the extent of visitation of patients that is presently permitted. . . . The restriction of current liberal practices with respect to patient visitation in order to reduce the incidence of bystander emotional disturbance claims would be a regrettable social consequence of enlarging the right to recover for emotional disturbances based upon the impact of medical malpractice upon bystanders." Id. 393. CT Page 7941
The Supreme Court most recently addressed the issue of bystander emotional distress actions in Clohessy v. Bachelor, 237 Conn. 31,675 A.2d 852 (1996). In that case the plaintiff mother and the plaintiff brother sought to recover damages for emotional injuries inflicted when the defendant's automobile negligently struck and killed BrendanClohessy. Id., 32-33. The court held that claims for bystander emotional distress should be recognized in certain instances. Id., 38-44. "We believe the time is ripe to recognize a cause of action for bystander emotional distress. Under certain circumstances, which are hereinafter delineated, we conclude that a tortfeasor may owe a legal duty to a bystander. Consequently, a tortfeasor who breaches that duty through negligent conduct may be liable for a bystander's emotional distress proximately caused by that conduct." Id., 46.
This court, together with others, has previously held that Clohessy v.Bachelor did not overrule Maloney v. Conroy, Langella v. G-WZ ofStamford, Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 148891 (August 2, 1996, Lewis, J.). "In fact,Clohessy indicated that bystander emotional distress was a problematic cause of action in the medical malpractice context". Smith v. Humes, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 143884 (July 22, 1997, Ryan, J.).
The Supreme Court's decision in Mendillo v. Board of Education,246 Conn. 456, 717 A.2d 1177 (1998), indicates that the holding inClohessy v. Bachelor did not overrule Maloney v. Conroy. "Although we have never specifically said so, our cases suggest that the imposition of third party liability on a tortfeasor is an exception to the general rule of the scope of tort liability that requires satisfaction of a special policy inquiry." Id., 480. "Thus, we have held that, for reasons of public policy . . . a physician owed no duty of care to his patient's daughter, who suffered emotional distress from observing her mother's health deteriorate from the physician's substandard care; Maloney v. Conroy,208 Conn. 392, 399, 545 A.2d 1059 (1988)" Id.
"The fact that the . . . plaintiffs have suffered a `genuine injury' is insufficient, at least in and of itself, to serve as a basis for imposing third party liability on the defendants. Such an injury is presumably present in all of the cases in which, for policy reasons, we have nonetheless declined to impose such liability. See, e.g., . . . Maloneyv. Conroy, supra, 208 Conn. 403. . . . Indeed, if the presence of a genuine injury were legally sufficient to impose third party liability, the only limitations on such liability would be the far reaches of foreseeability." Mendillo v. Board of Education, supra, 246 Conn. 492-493. Accordingly, because the appellate courts of this state still do not CT Page 7942 recognize a cause of action for bystander emotional distress in the context of medical malpractice cases, the defendants' motion to strike the third count of the plaintiffs' complaint is granted.[1]
The plaintiffs have set forth a cognizable cause of action in respondeat superior against a corporate employer when they allege that the individual employee was the agent, servant or employee of the corporation, and "was acting within her general authority to so." Thus, the motion to strike the entire complaint filed by the corporate defendant is denied.
So Ordered.
Dated at Stamford, Connecticut, this 19th day of June, 2002.
 ___________________ William B. Lewis, Judge T.R.